ANTON HANDAL (Bar No. 113812)
anh@handal-law.com
PAMELA C. CHALK (Bar No. 216411)
pchalk@handal-law.com
GABRIEL HEDRICK (Bar No. 220649)
ghedrick@handal-law.com
HANDAL & ASSOCIATES
750 B Street, Suite 2510
San Diego, California 92101
Tel: 619.544.6400
Fax: 619.696.0323
Attorneys for Plaintiff
e.Digital Corporation

Attorneys for Plaintiff
E.DIGITAL CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.DIGITAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DROPCAM, INC.,<br><br>Defendant. | Case No. 3:14-cv-04922-JST<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF (PATENT L.R. 4-5(a))**<br><br>Judge: Hon. Jon S. Tigar<br>Ctrm:  9<br>Hearing:  August 3, 2015<br>Time: 2:00 p.m. |

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-i-
*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

1

<u>**TABLE OF CONTENTS**</u>

I.    INTRODUCTION...................................................................................... 1

II.   PROCEDURAL HISTORY ......................................................................... 2

III.  LEGAL STANDARD ................................................................................. 2

IV.   AGREED UPON CONSTRUCTIONS ........................................................ 4

V.    CONSTRUCTION OF DISPUTED CLAIM TERMS ................................. 5

      A.    "social signature" ........................................................................... 5

      B.    "social template"............................................................................. 8

      C.    "social hierarchy" ......................................................................... 11

      D.    "unique social signature".............................................................. 13

      E.    "optical sensor"............................................................................. 14

      F.    "sensor value range" ..................................................................... 15

      G.    "information"................................................................................. 16

      H.    "provide/provides/providing differing levels of information" ................................. 18

      I.    "provided/provides/providing an update" ...................................... 20

      J.    "accurate"...................................................................................... 21

VI.   CONCLUSION......................................................................................... 24

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

1

## TABLE OF AUTHORITIES

**CASES**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) 4, 14

*Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) .................................. 3

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) ............................ 3, 9, 19

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001) .................. 4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) ........................................................................................................................................ 3

*Liebel Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) .................................. 3

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995 ........................ 2, 3, 4

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ............................................ 2, 3, 4

*Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012).............. 2, 16

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ........................ 2, 3, 4

**RULES**

Local Patent Rule 4-5(a) ................................................................................................................ 1

Patent L.R. 4-3 .............................................................................................................................. 2

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-iii-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

1    Pursuant to Local Patent Rule 4-5(a) and the Court's February 5, 2015, Scheduling Order

2    ("Scheduling Order") (Doc. No. 43), Plaintiff e.Digital Corporation ("Plaintiff" or "e.Digital")

3    submits the following Opening Claim Construction Brief in the above-entitled matter.

4    ## I.    INTRODUCTION

5        Plaintiff, e.Digital is the sole owner of U.S. Patent Nos. 8,306,514 ("the '514 patent");

6    8,311,522 ("the '522 patent"); 8,311,523 ("the '523 patent"); 8,311,524 ("the '524 patent");

7    8,315,618 ("the '618 patent"); and 8,315,619 ("the '619 patent"), which e.Digital refers to, in

8    combination with other patents not asserted here, as the "Nunchi" patents (collectively, the

9    "Asserted Patents" or "Nunchi Patents").   (Exhibits A–F.)   The application for the '522 patent

10   was filed on September 28, 2010 and was the first of all of the Asserted Patents to be filed.   (*Id.*)

11   Thereafter, the applications of each of the remaining Asserted Patents was filed and each is a

12   continuation of the '522 patent.[1]   Accordingly, aside from the "Cross-Reference to Related

13   Application" contained in each of the Continuation Patents that refer back to the '522 patent, the

14   disclosures contained in the specifications of each of the Asserted Patents are identical.[2]

15       Against Defendant Dropcam, Inc. ("Dropcam" or "Defendant"), e.Digital asserts claims

16   1, 3, 6, 17, 21, 24 and 25 of the '522 patent; claims 1, 3, 4, 5, 6, 32 and 33 of the '514 patent;

17   claims 1, 3, 4, 6, 8, 9, 10, 19, 21, 23, 25 and 26 of the '523 patent; claims 1, 3, 4, 5, 7 and 9 of

18   the '524 patent; claims 1, 3, 4, 15, 19, 20, 21, 23, 24, and 25 of the '618 patent; and claims 1, 3,

19   4, 8, 19, 21, 23, 29, 30 and 32 of the '619 patent.   The accused products include, but are not

20   limited to Defendant's Dropcam and Dropcam Pro wireless camera systems, which include,

21   without limitation, Defendant's server/cloud services, and subscription services for remote

22   _____

23   [1] The '522 patent is hereafter occasionally referred to as the "parent '522 patent."   The
     '514, '523, '524, '618, and '619 patents are hereinafter occasionally referred to collectively as
24   the "Continuation Patents."

25   [2] Because the specification of each of the Asserted Patents contains word-for-word
     identical disclosures, for the sake of brevity and efficiency, Plaintiff cites specifically herein to
26   the specification of the parent '522 patent.   However, Plaintiff represents and hereby notifies the
     Court and Defendant that Plaintiff relies on the exact same disclosures contained in the
27   Continuation Patents, which, again, contain exactly the same disclosures as the specification of
     the '522 patent.

28

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-1-
*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

1  monitoring and communication.

2  **II.   PROCEDURAL HISTORY**

3      e.Digital filed suit against Dropcam on July 1, 2014 in the Southern District of California.

4  (Doc. No. 1.)  Dropcam answered on August 12, 2014 and, on August 29, 2014, filed a motion to

5  transfer venue to this District.  (Doc. Nos. 17 and 19.)  The motion was granted on November 5,

6  2014 and the matter was transferred to this Court.  (Doc. Nos. 34 and 35.)

7      Pursuant to the Court's February 5, 2015 Scheduling Order, the parties exchanged their

8  proposed terms for construction and exchanged their preliminary claim constructions and

9  identification of intrinsic and extrinsic evidence.  Thereafter, the parties met and conferred on

10  multiple occasions to narrow the number of terms for the Court to construe.  On May 5, 2015,

11  the parties filed their Joint Claim Construction and Pre-Hearing Statement pursuant to the

12  Court's Scheduling Order and Patent L.R. 4-3.  (Doc. No. 49.)

13  **III.   LEGAL STANDARD**

14      Claim construction is an issue of law to be determined by the Court.  *Markman v.*

15  *Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 116

16  S. Ct. 1384, 134 L. Ed. 2d 577 (1996).  "[T]he interpretation to be given a term can only be

17  determined and confirmed with a full understanding of what the inventors actually invented and

18  intended to envelop with the claim."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir.

19  2005).

20      Claim terms are generally given their ordinary and customary meaning.  *Vitronics Corp.*

21  *v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In patent law, the ordinary and

22  customary meaning of a claim term is the meaning that the term would have to a person having

23  ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1313.  Claim

24  construction may deviate from the ordinary and customary meaning of a disputed term only if (1)

25  a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows

26  the full scope of a claim term either in the specification or during prosecution.  *Thorner v. Sony*

27  *Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012).

28      "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-2-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

1   to which the patentee is entitled the right to exclude.'" *Phillips, 415 F.3d at 1312* (quoting

2   *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir.

3   2004)).   Thus, in determining the proper construction of a claim, a court should first look to the

4   language of the claims.  *See Vitronics*, 90 F.3d at 1582; *see also Comark Communs. v. Harris*

5   *Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).  The context in which a disputed term is used in the

6   asserted claim may provide substantial guidance as to the meaning of the term.  *See Phillips*, 415

7   F.3d at 1314.

8          In determining the meaning of a term, the person of ordinary skill in the art is deemed "to

9   read the claim term not only in the context of the particular claim in which the disputed term

10   appears, but in the context of the entire patent, including the specification."  *Id.*   This test

11   provides an objective baseline from which to begin claim interpretation.  *Id.*  In some cases, the

12   ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim

13   construction involves "little more than the application of the widely accepted meaning of

14   commonly understood words." *Id. at 1314*.

15          Usually, the specification "is the single best guide to the meaning of a disputed term."

16   *Vitronics,* 90 F.3d at 1582.  It is therefore "entirely appropriate for a court, when conducting

17   claim construction, to rely heavily on the written description for guidance as to the meaning of

18   claims." *Phillips*, 415 F.3d at 1315.  However, "[t]he written description part of the specification

19   does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52

20   F.3d at 980; *Comark*, 156 F.3d at 1186.  Thus, in construing the terms of a claim, even though

21   claim terms are "understood in light of the specification, a claim construction must not import

22   limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d

23   1349, 1354 (Fed. Cir. 2012).  Moreover, "[e]ven when the specification describes only a single

24   embodiment, the claims of the patent will not be read restrictively unless the patentee has

25   demonstrated a clear intention to limit the claim scope using words or expressions of manifest

26   exclusion or restriction." *Liebel Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir.

27   2004).  Conversely, "a claim construction that excludes the preferred embodiment is rarely, if

28   ever, correct and would require highly persuasive evidentiary support." *Adams Respiratory*

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-3-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

1    *Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (citations omitted).

2    Finally, courts may consider extrinsic evidence in construing claims, such as "expert and
3    inventor testimony, dictionaries, and learned treatises." *Markman,* 52 F.3d at 980.   Expert
4    testimony may be useful to "provide background on the technology at issue, to explain how an
5    invention works, to ensure that the court's understanding of the technical aspects of the patent is
6    consistent with that of a person of skill in the art, or to establish that a particular term in the
7    patent or the prior art has a particular meaning in the pertinent field." *Phillips,* 415 F.3d at 1318.
8    However, extrinsic evidence is "less reliable than the patent and its prosecution history in
9    determining how to read claim terms." *Id.*   Further, "heavy reliance on the dictionary divorced
10   from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into
11   the meaning of the term in the abstract, out of its particular context, which is the specification."
12   *Id.* at 1321.   Thus, a court should not rely on extrinsic evidence in construing claims to contradict
13   the meaning of claims discernable from examination of the claims, the written description, and
14   the prosecution history.  *See Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1373
15   (Fed. Cir. 2001);  *Vitronics*, 90 F.3d at 1583.  If intrinsic evidence mandates the definition of a
16   term that is at odds with extrinsic evidence, courts must defer to the definition supplied by the
17   former.  *Dow Chem Co.* at 1373.

18   **IV.    AGREED UPON CONSTRUCTIONS**

19   The parties have agreed to the following constructions for each of the claim terms and
20   phrases listed below.

| Claim Term or Phrase | Agreed Upon Construction |
|---|---|
| "being selectable to provide" | "capable of being selected to provide" |
| "environment of the communication device" | "surroundings of the communication device within the detectable area of the communication device" |

26   e.Digital respectfully requests that the Court adopt the constructions agreed to by the
27   parties.

28

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-4-
*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

## V.    CONSTRUCTION OF DISPUTED CLAIM TERMS

The parties dispute the proper construction of ten separate claim terms and phrases. e.Digital respectfully urges the Court to adopt its constructions for the reasons set forth below.

### A.    "social signature"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "raw or processed data and/or other information based on sensors" | "combination of optical sensor data and acoustic sensor data indicative of a type of activity" |

Plaintiff respectfully requests that the term "social signature" be construed as "raw or processed data and/or other information based on sensors."  The intrinsic evidence amply supports plaintiff's proposed construction.  Defendant's proposed construction, on the other hand, is unduly limiting.

The specifications of each of the patents explain that one or more processor(s) of the invention "receives sensor data related to an environment of a communication device, creates a detected social signature from the received sensor data, [and] determines which of the social signatures of the social templates has the greatest correspondence with the created social signature."  (Ex. A ('522 patent) at Abstract.)  The terms "detected social signature," "created social signature" and "constructed social signature" are used interchangeably throughout the patents and refer to the raw or processed data that is derived from the sensors and formatted for use by the system of the invention.  (See, e.g., id. at 1:48-58; 2:5-19; 2:66-3:3; 3:19-23; 3:48-60; 4:14-18; 4:65-5:2; 5:19-32; 5:60-6:3; 6:19-24; 7:4-8; 7:13-37; 7:54-65; 9:5-11:6-14:34; 15:29-42; 17:51-18:18; 18:44-18:62; 19:11-20; Fig. 3.)

Dropcam's construction improperly limits the social signature to optical and acoustic sensor data.  (Id.)  Such a construction is contrary to the express language of the specifications, which provide that data compiled and formatted for the social signature can come from any number of sensor types, including, without limitation, acoustic and optical sensors, sensors that detect heart rate, ultrasound, infrared light, temperature, local network/data logging, touch screen capacitance, biometrics, communications and application use occurring on the mobile device,

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

1    pressure, magnetic fields, proximity and/or any combination of such sensors.  (Id. at 2:5-19; see

2    also id. at 2:66-3:3; 3:19-23; 3:48-60; 4:14-18; 4:65-5:2; 5:19-32; 5:60-6:3; 6:19-24; 7:4-8; 7:13-

3    37; 7:54-65; 9:5-11:6-14:34; 15:29-42; 16:14-26; 17:51-18:18; 18:44-18:62; 19:11-20, Claims 5,

4    7, 9, 13-16, 18-20.)

5            In fact, the dependent claims of the Asserted Patents expressly contemplate using other

6    sensors in addition to optical and acoustic sensors and also instead of optical and acoustic

7    sensors.  Specifically claim 8 of the '522 patent discloses the optical sensor and acoustic sensor.

8    (Ex. A at claim 8.)  Claim 9 of the '522 patent, which depends from claim 8, teaches in part "the

9    sensor set further comprises: a location sensor…; and an acceleration sensor."  (Emphasis

10   added.)  (Id. at claim 9.)  Claim 9 further discloses incorporating the data from these additional

11   sensors into the "created social signature."  (Id.)  Similarly, Claim 1 of the '522 patent also

12   discloses a communication device comprising optical and acoustic sensors.  (Id. at claim 1.)

13   However, Claim 5, which depends from claim 1, teaches, "wherein the sensor set comprises an

14   Ultra Wideband sensor," the data from which is incorporated into the detected social signature.

15   (Emphasis added.) (Id. at claim 5.)  The language of claim 5 therefore suggests that the Ultra

16   Wideband sensor in some cases could be the only sensor within the sensor set and not simply in

17   addition to the acoustic and optical sensors.  Accordingly, the social signature may be composed

18   of data from just one sensor, which may not necessarily be an acoustic or optical sensor.

19          In addition, the social signature need not incorporate a "combination" of optical and

20   acoustic sensor data as asserted by Dropcam.  First, though independent claim 1 and other claims

21   throughout the patents teach a memory that stores social templates comprised of "a first sensor

22   value range and a second sensor value range," this does not lead to the conclusion that there must

23   be two different sensors – only that there be two different value ranges.  (Ex. A at claim 1.)  For

24   example, in the Ultra Wideband sensor embodiment, the separate sensor value ranges may be (1)

25   size of the room and (2) obstacles in the room or even simply (1) length and (2) width, all of

26   which could come from the same sensor.  (See, e.g., Ex. A ('522 patent) at 13:46-53.)  As a

27   further example, in discussing potential types of sensors that can be used by the systems of the

28   Nunchi patents, the patentees used the disjunctive "or" when referring to combinations.  (See,

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-6-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

1    *e.g.,* Ex. A at 2:5-19 ("*or* combinations thereof")(emphasis added).)  This point is further born

2    out by the distinction between dependent claims 5 and 9 of the '522 patent discussed in the

3    previous paragraph.  If the system of the invention can be comprised of only one sensor set as

4    claim 5 of the '522 patent suggests (as do other similarly drafted claims of the Asserted Patents),

5    then the social signature need not be comprised of a "combination of" sensor data from different

6    sensors.

7            Further, claim 1 of the '522 patent (as well as other claims) discloses "a memory which

8    stores social templates, each social template corresponding to a unique social signature

9    comprising a first sensor value range and a second sensor value range *other than the first sensor*

10   *value range*."  (Emphasis added.) (Ex. A at claim 1.)  If a social signature were limited to only a

11   combination of optical sensor data and acoustic sensor data as argued by Dropcam (or any other

12   two sensors for that matter), there would have been no need for the inventors to specify that a

13   second sensor value range must be different than the first sensor value range since it would be

14   patently clear that acoustic sensor data and optical sensor data are inherently different from each

15   other and would thus produce different data values.

16           Of the 168 claims of the six asserted patents, only 7 expressly refer to a social signature

17   comprised of a combination of acoustic sensor information and optical sensor information.  (*See*

18   Ex. A at claim 17; Ex. C at claims 1 and 19; Ex. D at claim 1; Ex. E at claim 20; Ex. F at claims

19   1 and 19.)  Nearly all of those independent claims are followed by dependent claims that disclose

20   a social signature comprised of additional types of sensor data other than optical or acoustic

21   information.  (*See*, *e.g.*, Ex. A at claim 18 and 20; Ex. C at claims 2, 11, 12, 15, 16, 17, 18, 20,

22   27, 28; Ex. D at claims 2, 6, 11, 12, 15, 16, 17; Ex. F at claims 2, 11, 12, 15, 16, 17, 18, 20, 27.)

23   Indeed, the claims of U.S. Patent No. 9,002,331, a continuation of the '522 patent that is not

24   asserted in this case, only mention optical and audio sensors in one claim – independent claim

25   21; none of the other claims require optical or audio sensors.  (*See* Exhibit G, claims 1-25.)  It is

26   therefore unambiguously clear that Dropcam's proposed construction is too narrow and would be

27   nonsensical if read into many of the claims of the Asserted Patents.

28           Finally, Dropcam seeks to include the phrase "indicative of a type of activity" in its

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

proposed construction of "social signature."  This construction reveals Dropcam's lack of understanding of the different components of the systems of the Nunchi patents.  The "social signature" by itself is not "indicative of a type of activity."  It is simply a compilation of information related to one or more sensors.

The comparison of the detected social signature and the stored social templates may suggest that there is no activity.  (*See, e.g.,* Ex. C ('523 patent at claim 15 ("sensor set further comprises an input device which the user uses to input data, and the processor detects a status of the communication device according to use or ***non-use*** of the input device") (emphasis added).) For example, the comparison of the detected social signature and the stored social templates may simply suggest a map location, the availability of a user, an unusually high heart rate, that a device is not being used, that a device is outside, or that a room surrounding the communication device is empty.  These examples suggest, at best, a status, but none are necessarily indicative of an "activity."  (*See*, *e.g.*, Ex. A ('522 patent) at 9:59-65; 10:59-65; 11:66-12:2; 12:48-13:21; 13:46-58.)

Based on the foregoing, the intrinsic evidence supports the construction of the term "social signature" as "raw or processed data and/or other information based on sensors."  e.Digital further respectfully requests, based on the foregoing, that Dropcam's proposed construction be rejected.

**B.    "social template"**

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| "parameters and/or information for analysis of social signatures" | "data structure storing a social signature and a social hierarchy" |

The term "social template" should be construed as "parameters and/or information for analysis of social structures."  The "social template" of the Nunchi Patents does not "store" a social signature or a social hierarchy as asserted by Dropcam.

Dropcam confuses "corresponding" with "storing."  With respect to social templates, the specification of the parent '522 patent provides in pertinent part:

"The memory stores social templates ***corresponding*** to unique social signatures

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

and being selectable to provide, for each level of the predetermined social hierarchy, a corresponding different amount of information to each member of the predetermined social hierarchy and/or a social networking service."

(Ex. A ('522 patent) at Abstract (emphasis added); *see also id.* at 1:29-36; 2:59-60 ("According to an aspect of the invention, at least one of the social templates ***corresponds*** to an emergency update") (emphasis added); 3:28-33; 4:58-60; 5:34-42; 7:44-49; 18:67-19:10 ("the social signature or social signatures ***associated with*** each social template") (emphasis added); claims 1, 8, 17; Ex. B ('514 patent) at claims 1, 5, 10, 14, 21, 26, 34, 36; Ex. C ('523 patent) at claims 1 and 19; Ex. D ('524 patent) at claim 1; Ex. E ('618 patent) at claims 1, 6, 15, 22; Ex. F ('619 patent) at claims 1, 4, 19, 29.)

All that the Asserted Patents require is that a unique social signature and the information related to the predetermined hierarchy ***correspond*** to, or be ***associated with***, the social template. More importantly, the claims, themselves, do not require that the social template ***store*** a social signature or a social hierarchy.  Thus, to the extent Dropcam seeks to imply a physical storage of social signatures and social hierarchies within the social template from the language of the specifications, which is unsupportable in the first place, importing any such limitations into the claims would be improper.  *See Deere & Co. v. Bush Hog, LLC*, *supra*, 703 F.3d at 1354 ("a claim construction must not import limitations form the specification into the claims").

The specification illustrates the function of the social template in several examples, but the primary function of the social template is for determining whether a given detected social signature is within a value range associated with a classifiable event/condition/activity/non-event/non-activity.  (*See* Ex. A at claim 1 ("processor … determines which of the social signatures of the stored social templates has a greatest correspondence with the created social signature through comparison of the first and second detected sensor values and the first and second sensor value ranges of each stored social template; *see also, e.g., id.* at Fig. 3, 18:63-19:3 ("In operation 315 [of Fig. 3], the formatted data [i.e., the detected social signature] is compared to the social templates.  In operation 320, the calculating logic 150 or the remote calculating logic 275 makes an a priori classification assigning one of the social templates to the formatted data.  This a priori classification is based upon a closest match between the social signature in the

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

1    formatted data and the social signature or signatures associated with each social template").)

2       To accomplish the comparison function, the social template contains parameters or other

3    information with which the detected social signature can be compared.  Examples of such

4    parameters are shown in the embodiment reflected in Tables 1 and 2 of the specifications, where

5    the parameters are reflected as "value range(s)," within which the sensor values of the detected

6    social signature may fall.  (*See* Ex. A at 15:47-16:14.)  Dropcam's proposed construction fails to

7    account for the value ranges of the preferred embodiment.  Indeed, a sensor value range is the

8    only component of the social templates required by a number of the claims (though they could,

9    but are not required to, contain more information).  (*See*, *e.g.*, Ex. A at claims 1 ("each social

10   template corresponding to a unique social signature comprising a first sensor value range and a

11   second sensor value range …"), 8, and 17; Ex. B ('514 patent) at claims 1, 5, 10, 14, 21, 26, 34,

12   36; Ex. C ('523 patent) at claims 1 and 19; Ex. D ('524 patent) at claim 1; Ex. E ('618 patent) at

13   claims 1, 6, 15, 22; Ex. F ('619 patent) at claims 1, 4, 19, 29.)

14      e.Digital's proposed construction is also consistent with the plain and ordinary meaning

15   of a template.  The Merriam Webster Dictionary defines a "template" in part as "a gauge, mold

16   or pattern that functions as a guide."  (*See* Ex. H at 736.)  Similarly, Barron's Dictionary of

17   Computer and Internet Terms describes a "template" in part as a "pattern to be matched."  (Ex. J

18   at 492.) Dropcam's proposed construction does not resemble a template in any of these forms.

19      Finally, Dropcam's proposed construction, by using the singular "a," wrongly suggests

20   that each social template can correspond with only one social signature or social hierarchy.  This

21   is incorrect.  Each stored social template may be associated with multiple social signatures

22   and/or social hierarchies.  (*See*, *e.g.*, Ex. A at 17:39-43 ("each social template could be

23   associated with more than one set of social signatures"); 18:67-19:10 ("the social signature *or

24   social signatures* associated with each social template") (emphasis added).)

25      Based on the foregoing, e.Digital respectfully requests that the term "social template"

26   should be construed as "parameters and/or information for analysis of social signatures."  As set

27   forth above, e.Digital's construction, unlike Dropcam's, is supported by the intrinsic and

28   extrinsic evidence.

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-10-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*   Case No. 14-cv-04922-JST

C.      "social hierarchy"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "an arrangement of persons, things, information and/or operations in a series of levels" | "ordered ranking of social groups defined within each social template" |

The term "social hierarchy" should be construed as "an arrangement of persons, things, information and/or operations in a series of levels" as this is the only construction that is supported by both the intrinsic and extrinsic evidence.

The American Heritage Dictionary defines a hierarchy in part as "[a]n arrangement of persons or things in a graded series." (Ex. I at 398.)  The specifications of the Asserted Patents expand on this definition to include not only persons or things, but also the quantity, and type of delivery, of information made available to different persons.  For example, the specifications describe an "emergency" embodiment, wherein members of the various levels of the social hierarchy receive information through different operations:

> "By way of example, the social template could be designated for emergency situations, and automatically provide information to the police, fire department, family and/or friends. ***Such communication could be through text messages, emails, computer read messages sent to a voice line, and, where social networking service and/or microblog are set up, through networking service and microblog updates***. In this way, the device 100, 200 would be able to summon help in an emergency situation according to a status sensed from the various device sensors 110, 120, 130, 140."

(Ex. A at 21:4-14 (emphasis added); *see also id.* at 21:19-24, 21:28-33, 21:38-44.)   This embodiment does not require an "ordered ranking"  as suggested by Dropcam.  It likewise does not necessarily entail separate "social groups."[3]

Another embodiment involves automatically updating one or more social networking services or microblogs with desired information.  (*See, e.g., id.* at 2:46-54.)  In one of the described embodiments, the social hierarchy may consist of just one level. (*See, e.g., id.* at 6:56-

---

[3] Though, e.Digital concedes that it is not certain what Dropcam means by the word "social groups."  In the above embodiment, for example, a level requiring communication of information by text message and a level calling for communication via email, might conceivably be members of a single "social group," *e.g.*, separate members of the same nuclear family, depending on how that term is intended to be defined by Dropcam.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

59 ("According to an aspect of the invention, for at least one of the social templates, ***there is a single level of social hierarchy*** for a social networking service, and the processor automatically provides an update to the social networking services") (emphasis added); *see also* Ex. B ('514 patent) at claims 16 and 17; Ex. C ('523 patent) at claims 8 and 9).)   A social hierarchy composed of just one level cannot be an "ordered ranking."

In each of the embodiments described in the patents and in the claims, different types of information are automatically made available to people or websites based on what information the user wants to make available.   The levels of the hierarchy are not necessarily ordered or ranked.   What sets the hierarchy levels apart, assuming there is more than one, relates more to what and/or how information is provided to the various hierarchy levels and is not necessarily related to importance of the members of each hierarchy level – each level is simply "different." In this sense, then, an "ordered ranking," as proposed by Dropcam, is an inaccurate construction.

Likewise, the Nunchi patents do not require "defining" the social hierarchy "in" the social template as Dropcam's proposed construction suggests.   All that is required is that a social hierarchy be associated with a social template so that, when a social template is "selected" by the processor, the processor can make available the amount of information authorized by the user for the various members of the social hierarchy *based on* the selected social template.   (*See, e.g.*, Ex. A ('522 patent) at claim 1 (each social template being selectable to provide, for each level of the predetermined social hierarchy, a corresponding differing amount of information to each member of the predetermined social hierarchy).   Indeed, the claims are silent as to where the social hierarchy is "defined."

Based on the foregoing, e.Digital respectfully requests that the term "social hierarchy" be construed as "an arrangement of persons, things, information and/or operations in a series of levels."

///

///

///

///

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-12-
***PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF***                    Case No. 14-cv-04922-JST

### D.    "unique social signature"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a specific, currently associated social signature" | "social signature associated solely with one social template" |

Plaintiff respectfully requests that the term "unique social signature" be construed as "a specific, currently associated social signature."    The parties have proposed competing constructions of the term "social signature" as discussed above.  Thus, here, the parties' dispute centers on the term "unique."

"Unique" is defined by The American Heritage Dictionary in part as "characteristic only of a particular category or entity."  (Ex. I at 887.)  Similarly, here, a "unique social signature" is characteristic of a particular social template.  However, the problem with Dropcam's proposed construction is that the words "associated *solely with one* social template" imply that the social signature can only ever be associated with that one social template.  This is not correct and is wholly unsupported by the specification.

The specifications of the Nunchi Patents discuss a "training" or "learning" embodiment in which social templates are updated either by the user or by the processor when a social template is determined to be inaccurate (*e.g.*, when the system indicates that a user is "at work," when she is not or when she did not want that information provided to a particular level of a hierarchy, etc.).  (*See*, *e.g.*, Ex. A at 17:12-18:43; 20:13-25.)  Social signatures associated with the various social templates can therefore be in flux and social signatures can be associated with different social templates over time.  Thus, the term "unique" as used by the inventors must mean unique to the social template at the time the detected social signature is being processed.

e.Digital's proposed construction, when substituted into claim 1 of the '522 patent, for example, would read:

> "a memory which stores social templates, each social template corresponding to [a specific, currently associated social signature] comprising a first sensor value range and a second sensor value range other than the first sensor value range…"

This  proposed  construction,  thus,  incorporates  seamlessly  into  the  claim,  while  still encompassing the embodiments discussed above, while Defendant's construction would not.  *See*

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:   619.544.6400
FAX:   619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

1   *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, *supra*, 616 F.3d at 1290 ("a claim

2   construction that excludes a preferred embodiment is rarely, if ever, correct").

3       Based on the foregoing, e.Digital respectfully requests that Dropcam's proposed

4   construction be rejected and that the Court adopt e.Digital's construction.

5       **E.      "optical sensor"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning or, alternatively, "sensor that detects one or more amounts and/or characteristics of light within an environment" | "sensor that collects data about the amount of light in an environment" |

10       "Optical sensor" should be accorded its plain and ordinary meaning.  A "sensor" is

11   merely a device that receives and responds to a signal or stimulus, such as, by way of example

12   only, a photoelectric cell.  (*See* Ex. I at 751; Ex. H at 656.)  "Optical," then, suggests that the

13   signal or stimulus detected by the sensor is "light," which can have many characteristics – not

14   just an "amount" as Dropcam proposes.  (*See* Ex. H at 508; Ex. K at 583; Ex. L at 360.)  These

15   characteristics can include wavelength or color, reflection and refraction qualities, direction and

16   any other phenomena associated with light.  (*See* Ex. K at 583; Ex. L at 360.)

17       The specifications of the Nunchi Patents are consistent with this broader construction.

18   For example, the specifications of the parent '522 patent note that "[w]hile described in terms of

19   visible light, the optical sensor 330 could also be a type of camera which detects non-visible light

20   spectra, such as infrared or ultraviolet detectors, or other radiation and energy detectors." (Ex. A

21   at 12:2-5; *see also id.* at 9:35-43 ("While the user social statistics sensors are shown including

22   the sensors 110, 120, 130 [optical sensor], 140 [acoustic sensor], it is understood that the user

23   social statistics sensors can include other types of sensors ***in addition to or instead of*** one or

24   more of these sensor 110, 120, 130, 140, such as … infrared sensors … and other environmental

25   sensors which detect a user environment, or combinations thereof") (emphasis added).)  Thus,

26   the optical sensor contemplated by the inventor could include sensors that detect, among other

27   things, the wavelength or color of light in the environment (e.g., infrared or ultraviolet) or the

28   radiant energy of light in the environment and could thus, include, for example, a video camera.

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

Dropcam's proposed construction is plainly wrong. The optical sensor that Dropcam envisions seems to ignore information that can be collected from an optical sensor, such as, *e.g.*, images or color. Dropcam's proposed construction restricting detection to *only* an "amount of light" is therefore unduly limiting and e.Digital respectfully requests that its construction be adopted.

### F.     "sensor value range"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning or, alternatively, "information representing sensor data above, below or between a value(s)" | "range of measurements between two values" |

The intrinsic evidence supports a construction embodying the plain and ordinary meaning of "sensor value range," which is more than just a "range of measurements between two values" as proposed by Dropcam. For the following reasons, e.Digital therefore respectfully requests that "sensor value range" be given its plain and ordinary meaning. In the alternative, if the Court deems a construction necessary, the term should be construed as "information representing sensor data above, below or between a value(s)."

The plain and ordinary meaning of the term range is "a variation within limits." (Ex. H at 596.) In mathematics, the term means "the set of all possible output values from a mathematical function." (Ex. J at 406.) A range can therefore mean any set of output values, whether it is above, below or between a target value.

The intrinsic evidence is consistent with the plain and ordinary meaning. For example, in the example of biometric values described in the specifications of the Nunchi Patents, the patentee describes "time between each key stroke" on a touch screen or keyboard in terms of "greater than" (">") or "lesser than" ("<"). (*See, e.g.,* Ex. A at 10:16-24.) Similarly, in the sensor value ranges reflected in the example of Table 1 of the specifications, value ranges are reflected as above or below ("+/-") a certain value. (*Id.* at 15:47-57.) While these ranges could also be read as "between two values," based on the biometric example discussed above, one can easily envision a value range that involves a simple "lesser than" or "greater than" range. For

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

example, the value range of the inertial sensor in the Table 1 example could have been expressed as "< .2 m/s$^2$." Accordingly, Dropcam's attempt to limit the definition of "sensor value range" to merely a range *between* values should be rejected.

Based on the foregoing, e.Digital respectfully requests that the term "sensor value range" be accorded its plain and ordinary meaning or, alternatively, that it be construed as "information representing sensor data above, below or between a value(s)."

### G.    "information"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "a report about a single event that results from comparison of sensor data with social templates" |

e.Digital is at a loss for why Dropcam insists on requesting a construction for the term "information," which has a clear plain and ordinary meaning. (*See* Ex. I at 435; Ex. H at 372.) A Court should only construe a term if the intrinsic evidence shows that the inventor intended to deviate from the plain and ordinary meaning and acted as his own lexicographer. *Thorner v. Sony Computer Entm't Am. LLC, supra*, 669 F.3d at 1365. The intrinsic evidence indicates no intent to deviate from the plain and ordinary meaning and, for the following reasons, Dropcam's proposed construction should be rejected.

The term is best understood when viewed in the context of the claims. By way of example, claim 1 of the '522 patent provides:

A system to automatically provide differing levels of information according to a predetermined social hierarchy, the system comprising:

a communication device comprising a sensor set which detects sensor data comprising a first detected sensor value comprising an amount of light of the environment of the communication device from an optical sensor and a second detected sensor value comprising a sound level of the environment of the communication device from an acoustic sensor, and transmits the sensor data;

a memory which stores social templates, each social template corresponding to a unique social signature comprising a first sensor value range and a second sensor value range other than the first sensor value range and each

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

social template being selectable to provide, for each level of the predetermined social hierarchy, a corresponding differing amount of **information** to each member of the predetermined social hierarchy; and

a server comprising a processor which receives the sensor data from the communication device, creates a detected social signature from the received sensor data, determines which of the social signatures of the stored social templates has a greatest correspondence with the created social signature through comparison of the first and second detected sensor values and the first and second sensor value ranges of each stored social template, retrieves from the memory the determined one social template having the greatest correspondence and having the detected amount of light within the first sensor value range and the detected sound level within the second sensor value range, and provides to at least one member of the predetermined social hierarchy only as much **information** as allowed based on the retrieved social template.

(Emphasis added.) (Exhibit A at Claim 1.)

The first part of Dropcam's proposed construction restricts "information" to "a report about a single event." However, the information made available by the system of the Nunchi Patents need not be a "report" nor need it be related to a "single event." For example, the specifications of the Nunchi Patents describe an embodiment in which "the processor automatically determines if an incoming communication from a communication requestor is interruptive by, prior to completing the communication, assigning the communication requestor to one of the levels of the social hierarchy, and providing to the communication requestor only as much information as allowed under the social hierarchy as defined in the retrieved social template." (*Id.* at 2:31-38.) The embodiment does not specify that the information *must* be a "report about a single event." It could be, but it does not have to be. For example, the information conveyed to the "communication requestor" could be, "In a meeting" or "At the movies." However, the information conveyed to the "communication requestor" could simply be "I will call you back" or "Do not disturb," neither of which is a report or conveys anything about an "event." (*See id.* at 4:7-13 ("the third social hierarchy level provides information on only the desired contact state," and not the map location and the environment); 16:44-58 ("the social template only indicates that the mobile phone user does not want to be disturbed, except in an emergency"); *see also* Table 2 at 16:9-12.) All that the patents require is that some information is disclosed. (*See, e.g., id.* at 1:59-2:4.)

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-17-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

Finally, the information provided to the members of the social hierarchy need not be limited to "a single event."  The specifications make clear that the system may continuously sample the sensors for data.  (*See id.* at 11:57-61 ("In one embodiment, the optical sensor 130 includes charged coupling device (CCD) sensors, whereby image data is sampled by the CCD sensors"); 12:62-13:7 (disclosing using a location based sensor to continuously generate location information or at a sampling rate that may be fixed or variable); 18:44-52 ("sensor data is sampled by the calculating logic 150…The sampling can be performed at preset intervals, or continuously").)  Therefore, it is entirely conceivable that the Nunchi Patents contemplate and allow for the information provided to members to relate to more than a single event.  For example, in the embodiment cited above where the optical sensor includes CCD sensors, the sensors could continuously sample image data of a user's office.  The first sampled image data could show a person entering the office, the second sampled image data could show the user sitting at his desk typing, and a third sampled image data could show a second person entering the office and beginning a conversation.  Each set of data relates to what could be considered three separate "events" all of which correlate to a social template selectable to provide information to a member of a social hierarchy about these multiple events.

Based on the foregoing, the plain and ordinary meaning of "information" should be applied in this case and Dropcam's proposed limited construction should be rejected.

**H.    "provide/provides/providing differing levels of information"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "send/sends/sending information in varying levels of granularity" |

The phrase "provide/provides/providing differing levels of information" should be accorded its plain and ordinary meaning.  As set forth below, "providing" does not require that information actually be "sent" to a member of a social hierarchy.  In addition, "differing levels of information" is not limited to "varying levels of granularity."

"Provide" simply means "to make available (something needed or desired)."  (Ex. I at 671.)  It does not require "sending" or "delivery" or even "receipt," all of which is implied by

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

Defendant's proposed construction.  Thus, by way of example and not limitation, the system of the Nunchi Patents would allow for information to be placed on a server that requires a user to log in at their option to obtain access to the provided information.  The "differing levels of information" can be accomplished, by way of example and not limitation, by varying the information based on the respective users' login information.  In this sense, the information is made available as the plain and ordinary meaning of "provide" encompasses, but not technically sent.  Although this particular embodiment is not discussed in the specifications of the Nunchi Patents, the scope of a patent is not limited to its preferred embodiments.  *See Deere & Co. v. Bush Hog, LLC*, *supra*, 703 F.3d at 1354 ("a claim construction must not import limitations form the specification into the claims"). (*See also* Ex. A at 22:41-67.)   More importantly, it is consistent with the plain and ordinary meaning of "provide" and the breadth of the claims themselves.

Moreover, Dropcam's proposed construction could potentially exclude the "social network" and "microblog" embodiments discussed in the patents that disclose "updating," e.g., a personal Facebook or Linked-In page, which is not strictly "sending" information, but could also encompass a simple modification of an already existing post.  (*See*, *e.g.*, Ex. A at 20:37-49 ("the social template might be to log in and ***send or update*** specific information to one or more social networking services and/or microblogs") (emphasis added); *see also id.* at 8:16-27.)

Finally, "differing levels of information" is not limited to "varying levels of granularity."  For this portion of its proposed construction, Dropcam borrows from a portion of the specifications that state, in part, "As such, each social template can be set up with varying levels of granularity in so far as who is given which information about the user of the mobile device 100 prior to the call being placed."  (Ex. A at 17:12-15.)  Here, however, the patentee is referring to allowing a user to set up the social templates such that any one user can be given different amounts of information across different social templates.

Based on the foregoing, the phrase "provide/provides/providing differing levels of information" should be given its plain and ordinary meaning.  Defendant's proposed construction should therefore be rejected.

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                     Case No. 14-cv-04922-JST

I.     "provided/provides/providing an update"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "sent/sends/sending information indicating a user's status" |

The phrase "provided/provides/providing an update" should be given its plain and ordinary meaning.  As set forth above, the plain and ordinary meaning of the term "provide" is "to make available" and, accordingly, narrowing the term to "sent/sends/sending" is unduly limiting.  Likewise, Dropcam's construction of "update" as "information indicating a user's status" is too narrow.

This phrase appears in claims in each of the asserted Nunchi Patents, except the '522 patent and the '618 patent.  In each of the remaining patents, it is presented in the context of updating a social network (e.g., Facebook or Instagram) or microblog (*e.g.*, Twitter).  Barron's Dictionary of Computing and Internet Terms explains that a social networking site can be used, among other things, for "sharing pictures, music, text, and links" or for "chat" and mail functions.  (Ex. J at 459.)  Similarly, microblogs are used for "publishing short personal messages."  (*Id.* at 316.)  These pictures, music, text, links and personal messages are not necessarily limited to a "user's status."

To use a home break-in example, an update to a social networking site would not necessarily relate to the *user's* status as the user may not be home.  For example, the update to the social network site might be "Home break-in detected.  Police have been alerted."  With respect to a home fire emergency social template (*see* Ex. A at 21:25-33), the update my say, "Home fire detected, 911 contacted."  (*See*, *e.g.*, *id.* at 21:4-15 (explaining that emergency alerts could be communicated via social network and/or microblog updates).)  Similarly, in the car crash embodiment discussed in the specifications (*see id.* at 16-24), the alert may not relate to the user, but to a spouse or teenage child who is driving the vehicle.  Each of these update examples convey nothing about the user's status.  A person of ordinary skill in the art could easily imagine other circumstances in which a social network or microblog update would not necessarily relate to a user's status.

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

1   Based on the foregoing, e.Digital respectfully requests that Dropcam's proposed

2   construction be rejected and that the phrase "provide/provides/providing an update" be given its

3   plain and ordinary meaning.

4   **J.   "accurate"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "capable of desired processing" | "free from mistakes or errors" |

8   The term "accurate" should be construed as "capable of desired processing." As set forth

9   below, this construction is supported by the specifications.

10   This term is best understood in the context of the claims in which it appears. It appears in

11   claims of each of the asserted Nunchi Patents except the '514 patent and the '522 patent. In each

12   of the remaining patents, the term is presented in the context of "training" the system to select

13   the desired social templates. (*See* Ex. C ('523 patent) at claims 4, 21; Ex. D ('524 patent) at

14   claims 3, 4; Ex. E ('618 patent) at claims 1, 6, 15, 23, 24; and Ex. F ('619 patent) at claims 4, 21,

15   29, 30.) For example, claim 15 of the '618 patent provides in pertinent part:

16   A method of training a system which automatically provides differing levels of
17   information according to a predetermined social hierarchy, the method
     comprising:

18
19   …determining which one of a plurality of social templates has a social
         signature with a greatest correspondence with the constructed social
20       signature through comparison of the first and second detected sensor
         values and first and second sensor value ranges of each stored social
         template, each social template corresponding to a unique social signature
21       comprising corresponding first and second sensor value ranges and each
         social template being selectable to provide, for each level of the
22       predetermined social hierarchy, a corresponding differing amount of
         information to each member of the predetermined social hierarchy;
23

24   **detecting an error between the constructed social signature and the social**
25   **signature of the determined one social template** having the greatest
         correspondence;

26   **updating the social signature of the determined one social template to**
27   **include the detected error** in the first and/or second sensor value ranges
     **such that the social signature of the determined one social template**
28   **incorporates the detected social signature** and has the detected amount of

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

> light within the first sensor value range and the detected sound level within the second sensor value range **where it is determined that the determined one social template is accurate**;
>
> **creating a new social template** using the detected social signature **where it is determined that the determined one social template is not accurate**...

(Emphasis added.)  (Ex. E at claim 15.)

The specifications describe a number of embodiments of this "training" process.  For example, the specifications explain:

> [I]n order to ensure that the social template is accurate, the mobile device 100 includes a social training program 167 stored within the memory 160. Using the social training program 167, the user can save particular sets of social signature as new social templates, or increase the accuracy of an existing social template using the social signature.
>
> Using the above example in relation to the Mother and the Baby, in order to set up the social template in the first instance, the Mother would activate the social training program 167 while in the nursery with the Baby, and the social signature would be associated with that particular social template. Specifically, the data sensed by the location sensor 110, the inertial sensor 120, the optical sensor 130, and the acoustic sensor 140 would be correlated with the new social template, and the Mother would then enter the degrees of information to be provided to various categories of potential callers (i.e., Father, Friend, Neighbor, Office, School, Stranger etc.). Subsequently, should a caller be given the wrong amounts of information, the Mother could again activate the social training program 167 to improve the social signatures recognized by the social template. In this manner, each social template could be associated with more than one set of social signatures so as 40 to allow for variations from the original detected social signature and to improve the functionality of the mobile device 100.

(Ex. A at 17:15-43; *see also id.* at 18:63-19:58 [describing the social training in the context of a user's presence at a movie theater].)

Thus, the "training" claims are generally directed to ensuring that the social signatures and social templates are processed in way that information is distributed to the different levels of the social hierarchy in the manner desired by the user – in other words, to ensure that the social signatures and social templates are processed in the manner desired by the user.  Plaintiff's proposed construction is therefore correct and consistent with the "training" claims and embodiments.

Dropcam's proposed construction, on the other hand, has no support in the specifications

**HANDAL & ASSOCIATES**
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-22-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST

1 and reflects a general misunderstanding of the process described in the patents.  As an example,

2 with respect to one of the "training" embodiments, the calculating logic "makes an a priori

3 classification assigning one of the social templates to the [detected social signature]…based upon

4 a closest match between the [detected social signature] and the social signature or signatures

5 associated with each social template." (*Id.* at 18:63-19:4.)  The specifications then discuss what

6 it refers to as a "classification error," which refers to a difference between the sensor value of a

7 detected social signature and the sensor value range of the closest matching social template.  (*Id.*

8 at 18:63-19:34.)  For example, where a detected sensor value falls outside the range provided for

9 in the social template.

10        As part of the training process, "the user might be prompted to confirm that the a priori

11 classification is accurate." (*Id.* at 19:40-41.)  If so, the social template can be updated to include

12 the sensor value of the detected social signature (initially deemed a classification error) and the

13 detected social signature can be processed using that social template.  (*See id.* at 19:34-46.)

14 Thus, even if there is initially a classification error, the social template may still be accurate, i.e.,

15 capable of processing the detected social signature in the manner desired by the user.

16        Conversely, where the social template is determined to be "not accurate," this does not

17 necessarily mean the social template contains a "mistake."  The specifications of the asserted

18 patents explain with respect to the above-discussed embodiment, "where the a priori

19 classification is not accurate, a new social template can be created.  In this manner, the social

20 templates are constantly refined." (Emphasis added.) (*Id.* at 19:46-48.)  This does not mean

21 there is a "mistake" in the social template selected as the greatest corresponding social template.

22 It could simply mean that the user desires to apply a different template to process the detected

23 social signature.  Accordingly, the presence or absence of  "mistakes or errors" in the social

24 template is not a requirement to implement the "training" claims and embodiments.

25        As set forth above, "capable of desired processing" is the proper construction of the term

26 "accurate" as used in the Nunchi Patents.  This construction is what was intended by the inventor

27 and is supported by the intrinsic evidence.  Dropcam's proposed construction is therefore wrong

28 and should be rejected.

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

VI.     **<u>CONCLUSION</u>**

Based on the foregoing, e.Digital respectfully requests that Dropcam's proposed constructions be rejected and that the Court adopt e.Digital's proposed constructions as set forth above.

                                    Respectfully submitted.

                                    **HANDAL & ASSOCIATES**

Dated:  June 10, 2015          By:   <u>/s/ Gabriel G. Hedrick</u>
                                     Anton N. Handal
                                     Pamela C. Chalk
                                     Gabriel G. Hedrick
                                     Attorneys for Plaintiff
                                     e.Digital Corporation

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-24-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*                    Case No. 14-cv-04922-JST

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed this 10th day of June, 2015 at San Diego, California.


/s/ Gabriel G. Hedrick

Gabriel G. Hedrick

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-25-

*PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF*          Case No. 14-cv-04922-JST